# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CINCINNATI INSURANCE CO., )
)
                      Plaintiff, )
)
vs. )        **Case No. 16-cv-0666-MJR-SCW**
)
MENARDS, INC., )
and DARIN SIGLER, )
)
                 Defendants. )

## MEMORANDUM AND ORDER

**Chief Judge Reagan:**

### A.    Procedural Background and Summary of Key Allegations

On May 20, 2014, in the parking lot of the Menards home improvement store in Marion, Illinois, Darin Sigler was standing next to a pickup truck -- a truck belonging to his girlfriend Barbara's stepfather (Ronald Gregory) -- when a forklift collided with the truck, causing the truck door to strike Sigler. According to Menards, Sigler was helping his girlfriend pick up carpeting from the store, Sigler had Mr. Gregory's permission to drive the truck, the forklift was operated by a Menards employee (Anthony Parrino), Parrino was loading the carpet into the truck, and Sigler was injured in the collision. (Cincinnati Insurance Company takes issue with some of these allegations. *See* Doc. 42, pp. 2-4.)

Sigler filed suit on September 12, 2014 in the Circuit Court of Williamson County, Illinois, looking to recover for personal injuries he suffered in the collision. Sigler named Menards as the sole defendant and alleged that (through its employee) Menards

was negligent in various ways that caused or contributed to the accident and to Sigler's injuries. ***Darin Sigler v. Menard, Inc.,*** **Case No. 2014-L-156 ("the underlying action").**

On March 24, 2016, Menards tendered the defense of the underlying action to Cincinnati Insurance Company (CIC). Menards asserted that CIC issued an insurance policy to Ronald and Virginia Gregory which covered the truck. Claiming that it qualified as an insured under that policy, Menards sought defense and indemnity from CIC in the underlying action. CIC denied the tender of defense on April 7, 2016.

Two months later, in June 2016, CIC filed in this Court a complaint for declaratory judgment, naming Menards and Sigler as defendants. CIC seeks a declaration of the parties' rights and obligations under two insurance policies. The undersigned enjoys subject matter jurisdiction over the declaratory judgment action based on the federal diversity statute, 28 U.S.C. 1332.[1]

Two insurance policies are in play. CIC issued a personal automobile liability policy to Ronald and Virginia Gregory effective October 1, 2013 through October 1, 2014, policy number A01-0546062 (the Auto Policy) and issued a personal umbrella liability policy to Ronald and Virginia Gregory effective October 1, 2013 through October 1, 2014, policy number U01-0546062 (the Umbrella Policy).

CIC's amended complaint filed on October 12, 2016 (Doc. 28) alleges that CIC has no duty to defend or indemnify Menards in the underlying action, because Menards is not a "covered person" under the Auto Policy (Count I), business exclusions in both

---

[1]     Plaintiff CIC is an Ohio citizen. Defendant Menards is a Wisconsin citizen. Defendant Sigler is an Illinois citizen. The amount in controversy exceeds $75,000.

policies preclude coverage in the underlying action (Count II), an off-the-road vehicle exclusion in the Auto Policy applies to the forklift and precludes coverage for Menards in the underlying action (Count III), Menards failed to comply with notice requirements in both policies (Count IV), Menards has insurance with other carriers which renders the CIC policies "excess" and relieves CIC of the duty to defend Menards in the underlying action (Count V), and to the extent the Umbrella Policy provides any coverage to Menards in the underlying action, that coverage has not yet been triggered (Count VI).

Now before the Court are cross-motions for summary judgment filed by Plaintiff CIC (Docs. 36-37) and Defendant Menards (Doc. 38). Responses were filed on May 1, 2017 (Docs. 42-43) and reply briefs on May 23, 2017 (Docs. 45-46). As explained below, the Court denies in part CIC's motion (Doc. 36) and grants in part Menards' motion (Doc. 38).

### B. Applicable Legal Standards

Because the undersigned exercises diversity jurisdiction in this action, state substantive law applies and federal procedural rules apply. *See, e.g., Doermer v. Callen,* **847 F.3d 522, 529 (7th Cir. 2017), citing** *Goesel v. Boley Int'l (H.K.) Ltd.,* **806 F.3d 414, 419 (7th Cir. 2015), and** *Erie Railroad Co. v. Tompkins,* **304 U.S. 64 (1938).** *See also Great West Cas. Co. v. Robbins,* **833 F.3d 711, 715 (7th Cir. 2016).**

Federal courts deciding state law claims apply the forum state's choice of law rules to select the applicable state substantive law, and if no party has raised the choice-of-law issue, "the federal court may simply apply the forum state's substantive law."

*Selective Ins. Co. of South Carolina v. Target Corp.,* **845 F.3d 263, 266 (7th Cir. 2016),** *quoting McCoy v. Iberdrola Renewables, Inc.,* **760 F.3d 674, 684 (7th Cir. 2014).** *See also Title Industry Assurance Co., R.R.G. v. First American Title Ins. Co.,* **853 F.3d 876, 883 (7th Cir. 2017) ("The interpretation of an insurance policy and the contours of the insurer's duty to defend are questions of state law.").** Here, no one disputes that Illinois substantive law applies.

Under Illinois law, the primary goal in interpreting an insurance policy is "to give effect to the intent of the parties as expressed in the agreement." *Berg v. New York Life Ins. Co.,* **831 F.3d 426, 428-29 (7th Cir. 2016),** *quoting DeSaga v. W. Bend Mut. Ins. Co.,* **910 N.E.2d 159, 163 (Ill. 2009).** When the terms of an insurance policy are unambiguous, they must be given their plain, ordinary meaning and enforced as written, unless doing so would contravene public policy. *Id.* **at 429.** If the policy language is ambiguous (i.e., susceptible to more than one reasonable meaning), the policy is construed against the insurer. *Berg,* **831 F.3d at 429,** *citing Gillen v. State Farm Mut. Auto. Ins. Co.,* **830 N.E.2d 575, 582 (Ill. 2005).** *Accord Trotter v. Harleysville Ins. Co.,* **821 F.3d 916, 918 (7th Cir. 2016) ("Under Illinois law, a provision in an insurance policy is ambiguous only when it is susceptible to more than one reasonable interpretation.").** A court should not strain to find an ambiguity where none exists. *Berg,* **831 F.3d at 429,** *quoting Founders Ins. Co. v. Munoz,* **930 N.E2d 999, 1004 (Ill. 2010).**

Additionally, any policy provision that limits or excludes coverage "must be construed liberally in favor of the insured and against the insurer" and applied only if

its terms are clear, definite, and specific. ***Berg, 831 F.3d at 429, quoting DeSaga, 910 N.E.2d at 164, and*** *Gillen,* **830 N.E.2d at 582.** The undersigned also bears in mind that the court must construe an insurance policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract." ***Westfield Ins. Co. v. Vandenberg, 796 F.3d 773, 778 (7th Cir. 2015), quoting Crum & Forster Managers Corp. v. Resolution Tr. Corp., 620 N.E.2d 1073, 1078 (Ill. 1993).***

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. ***Taylor-Novotny v. Health Alliance Medical Plans, Inc., 772 F.3d 478, 488 (7th Cir. 2014). Accord Archdiocese of Milwaukee v. Doe, 743 F.3d 1101, 1105 (7th Cir. 2014), citing*** Fed. R. Civ. P. **56.** A "material fact" is a fact that affects the outcome of the lawsuit, i.e., it is outcome-determinative under the applicable substantive law. ***Taylor-Novotny,* 772 F.3d at 488; *Hanover Ins. Co. v. Northern Bldg. Co.,* 751 F.3d 788, 791 (7th Cir.), *cert. denied,* 135 S. Ct. 280 (2014).**

A genuine issue of material fact remains (and summary judgment should be denied), "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).*** However, if the factual record taken as a whole could not lead a reasonable jury to find for the non-moving party, there is nothing for the jury to do, and summary judgment is properly granted. ***Bunn v.***

*Khoury Enterprises, Inc.,* **753 F.3d 676, 682 (7th Cir. 2014),** *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 587 (1986).**

In assessing whether a genuine issue of material fact exists, this Court views the record in the light most favorable to the non-moving party. *Bunn,* **753 F.3d at 682.** *See also 520 South Michigan Ave. Associates, Ltd. v. Unite Here Local 1,* **760 F.3d 708, 718 (7th Cir. 2014).** The undersigned examines the competent evidence of record "in the light reasonably most favorable to the non-moving party," giving the non-movant the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in the non-movant's favor. *Spaine v. Community Contacts, Inc.,* **756 F.3d 542, 544 (7th Cir. 2014).**

On cross-motions for summary judgment, the court construes all facts and reasonable inferences derived from those facts "in favor of the party against whom the motion under consideration was made." *Great West Cas. Co. v. Robbins,* **833 F.3d 711, 715 (7th Cir. 2016),** *quoting Clarendon Nat. Ins. Co. v. Medina,* **645 F.3d 928, 933 (7th Cir. 2011).** In other words, the undersigned views the facts and reasonable inferences in the light most favorable to the nonmovant on each motion. *Lalowski v. City of Des Plaines,* **789 F.3d 784, 787 (7th Cir. 2015).**

C.    <u>Analysis</u>

The ultimate question presented by this case is whether CIC has a <u>duty to defend</u> and/or a <u>duty to indemnify</u> Menards in the underlying action. In its summary judgment motion, CIC seeks a declaration that it owes neither duty because Menards' breached the notice condition of the policies (Doc. 36, p. 2). In its cross-motion,

Menards asks the undersigned to declare that omnibus coverage is afforded to Menards, that CIC owes a duty to defend Menard's in the underlying lawsuit, and that CIC should reimburse Menards for attorney fees and costs incurred in defending that action (Doc. 38, p. 15).

A few general principles regarding these duties warrant mention. The starting point is the oft-quoted principle of Illinois law that an insurer's duty to defend is "much broader" than its duty to indemnify. *Landmark American Ins. Co. v. Hilger,* **838 F.3d 821, 824 (7ᵗʰ Cir. 2016).** The insurer's duty to defend depends on the allegations of the complaint, as opposed to what is actually proved. *Selective Ins.,* **845 F.3d at 269.**

The duty to defend exists if the factual allegations of the underlying complaint fall within or *potentially* fall within policy coverage. *Id., citing Amerisure Mut. Ins. Co. v. Microplastics, Inc.,* **622 F.3d 806, 810 (7ᵗʰ Cir. 2010).** The Court examines the factual allegations and policy terms keeping in mind that ambiguities are resolved against the insurer. However, this principle favoring the insured "must 'yield to the paramount rule of reasonable construction which guides all contract interpretations.'" *Selective Ins.,* **845 F.3d at 269,** *quoting Amerisure,* **622 F.3d at 811.**

Eight weeks ago, the Seventh Circuit reiterated:

"A duty to defend will arise when the allegations of the underlying complaint may potentially come within the coverage of the policy." *Westfield Ins. Co. v. West Van Buren, LLC,* … 59 N.E.3d 877, 882 (2016). The insurer may not simply refuse to defend a suit against its insured unless it is clear from the underlying complaint "that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Employers Ins. of Wausau v. Ehlco Liquidating Trust,* … 708 N.E.2d 1122, 1136 (1999)….

In deciding whether an insurer breached its duty, Illinois courts ordinarily apply the "eight-corners" rule: "the court 'compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage.'" *American Alternative Ins. Corp. v. Metro Paramedic Services, Inc.*, 829 F.3d 509, 513–14 (7th Cir. 2016)….

*Title Industry,* 853 F.3d at 883.

If the insurer "tries to deny coverage without seeking a declaratory judgment or defending under a reservation of rights," the court's inquiry is "necessarily limited to the allegations of the underlying complaint." If the insurer files a declaratory judgment action, that limitation does not apply. *Selective Ins.*, 845 F.3d at 269, *citing Landmark,* 838 F.3d at 824. In that instance, the trial court may look *beyond* the underlying complaint and consider all relevant facts contained in the pleadings (e.g., in a third-party complaint or other evidence appropriate to a motion for summary judgment) to determine if there is a duty to defend. *Selective Ins.*, 845 F.3d at 269, *citing Pekin Ins. Co. v. Wilson,* 930 N.E.2d 1011, 1020 (Ill. 2010). *See also Title Industry,* 853 F.3d at 884 (if declaratory judgment action is filed, court can look beyond insurance policy and underlying complaint and consider extrinsic evidence).

The duty to indemnify is determined after liability has been affixed. *Nat'l Am. Ins. Co. v. Artisan Truckers Cas. Co.,* 796 F.3d 717, 724 (7th Cir. 2015). "The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action" that gave rise to the claim under the policy. *Pekin,* 930 N.E.2d at 1018, *quoting Zurich Ins. Co. v. Raymark Industries, Inc.,* 514 N.E.2d 150, 163 (Ill. 1987). *Accord Allied Property & Cas. Ins. Co. v. Metro North Condominium Ass'n,* 850 F.3d

**844, 847 (7th Cir. 2017) (Once the insured has incurred liability on the underlying claim, the insurer's duty to indemnify is triggered only if the insured's activity and resulting loss or damage actually fall within policy coverage).**

Turning to the case at bar, CIC's amended complaint offers six bases on which the Court could declare that CIC owes no duty to Menards in the underlying action. CIC's summary judgment motion pares this down to a single ground – Menard breached the notice requirement in both insurance policies, thereby forfeiting the right to any coverage.

Under Illinois law, a notice provision in an insurance policy is a "condition precedent" to trigger the insurer's contractual duties. *AMCO Ins. Co. v. Erie Ins. Exchange*, **49 N.E.3d 900, 907-08 (Ill. App. 2016).** If the insured fails to comply with the notice provision, "the insurer may be relieved from its duty to defend and indemnify the insured under the policy." *Id., quoting Northern Ins. Co. of New York v. City of Chicago*, **759 N.E.2d 144, 149 (Ill. App. 2001).** The Illinois Supreme Court has emphasized that insurance policy notice provisions are not mere technical requirements. They are valid prerequisites to coverage, conditions precedent that trigger the insurer's contractual duties. *Country Mutual Ins. Co. v. Livorsi Marine, Inc.*, **856 N.E.2d 338, 341 (Ill. 2006); *Zurich Ins. Co. v. Walsh Construction Co. of Illinois, Inc.*, **816 N.E.2d 801, 805 (Ill. 2004).**

The purpose of an insurance policy notice requirement is to allow the insurer to conduct a timely, thorough investigation of the insured's claim and to gather and preserve possible evidence. *Commercial Underwriters Ins. Co. v. Aires Environmental*

*Services, Ltd.,* **259 F.3d 792, 795-96 (7th Cir. 2001);** *AMCO,* **49 N.E.3d at 908;** *Kerr v. Illinois Central R.R. Co.,* **670 N.E.2d 759, 767 (Ill. 1996).** *Accord Berglind v. Paintball Business Ass'n,* **930 N.E.2d 1036, 1044 (Ill. App. 2010) (purpose of notice provision is to ensure the insurer can timely investigate and defend claims against its insured).**

Without question, an insured must act diligently in providing notice to its insurer. *Berglind,* **930 N.E.2d at 1044.** Illinois Supreme Court jurisprudence establishes that a policy calling for notice "as soon as practicable" means notice within a reasonable time, and what constitutes a reasonable period of time is a fact-dependent, case-by-case inquiry. *Id.*[2] "Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy." *Country Mutual,* **856 N.E.2d at 343,** *citing Simmon v. Iowa Mutual Cas. Co.,* **121 N.E.2d 509 (Ill. 1954).**

In deciding whether notice was given within a reasonable time, the court applies five factors: (1) the specific language of the policy's notice provision, (2) the insured's degree of sophistication in commerce and insurance matters, (3) the insured's awareness that an occurrence under the policy terms has taken place; (4) the insured's diligence in ascertaining whether coverage is available; and (5) any prejudice to the insurer. *AMCO,* **49 N.E.3d at 908;** *Berglind,* **930 N.E.2d at 1045;** *Country Mutual,* **856 N.E.2d at 344.** These are sometimes referred to as the *Simmon* factors, with prejudice to the insurer being one factor in the reasonableness analysis.[3]

---

[2] The timeliness of notice to an insurer generally presents a question of fact. *West American Ins. Co. v. Yorkville Nat. Bank,* **939 N.E.2d 288, 293 (Ill. 2010).** Where the facts as to when notice was given are undisputed, though, the reasonableness of notice is a question of law. *AMCO,* **49 N.E.3d at 908.**

In ***Country Mutual v. Livorsi,*** the Illinois Supreme Court confronted a line of Illinois cases (tracing back to ***Rice v. AAA Aerostar, Inc.,* 690 N.E.2d 1067 (Ill. App. 1998)**), which suggested that to escape liability on its policy, *an insurer must show that it was prejudiced* by the insured's delay in giving notice. The Illinois Supreme Court debunked this concept and clarified (***Country Mutual,* 856 N.E.2d at 346**):

> We will not permit the anomaly of *Rice* to supersede decades of case law [which] clearly held that even if there is no prejudice to the insurer, a policyholder still must give reasonable notice according to the terms of the insurance policy. This court in *Simmon* did not distinguish between notice of an occurrence and notice of a lawsuit, and we decline to do so today.
>
> Accordingly, we hold that the presence or absence of prejudice to the insurer is one factor to consider when determining whether a policyholder has fulfilled any policy condition requiring reasonable notice. We also hold that once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer. To the extent that *Rice* and its progeny contradict our holdings, [they] are overruled.

In the wake of that 2006 decision*,* some cases refer to the ***Simmon*** reasonableness analysis as the "*Country Mutual*" factors. ***See, e.g., West American,* 939 N.E.2d at 294.** Counsel argue about the proper application of those factors here. We begin with the relevant policy language.

**The Auto Policy**, Part E – Duties After an Accident or Loss, provides:

GENERAL DUTIES
"We" have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

---

[3]      There are two kinds of notice – notice of an *occurrence* and notice of a *lawsuit.* Insurance policies often have separate notice provisions addressing these. Illinois courts generally apply the ***Simmon*** analysis regardless of the type of notice at issue.

"We" must be **notified promptly** of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured person and of any witnesses.

A person seeking any coverage must:
1.      Cooperate with "us" in the investigation, settlement or defense of any claim or suit.
2.      **Promptly** send "us" copies of any notices or legal papers received in connection with the accident or loss.

Doc. 28-3, p. 17 (emphasis added).

**The Umbrella Policy**, Section I – Coverage, provides:

A.      Insuring Agreement.
        …
        2.      "We" will pay on behalf of the "insured" the "ultimate net loss" which the "insured" is legally obligated to pay as damages for "bodily injury", "personal injury" or "property damage" arising out of an "occurrence" to which this insurance applies.
        a.      Which is in excess of the "underlying insurance"; or
        b.      Which is either excluded or not covered by the "underlying insurance."

Doc. 28-4, p. 8.

**The Umbrella Policy**, Section III - Conditions, provides:

7.      Duties in the Event of an Occurrence, Claim or Suit

        In case of an "occurrence", claim or "suit", "you" and any other involved "insured" will perform the following duties. **"We" have no duty to provide coverage under this policy if "your" or any other "insured's" failure to comply with the following duties is prejudicial to "us."** "You" and any other involved "insured" shall cooperate with "us" in seeing that these duties are performed:

        a.      "You" and any other involved "insured" must see to it that "we" are **notified as soon as practicable** of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include….

    b.      If a claim is made or "suit" is brought against an "insured" that is likely to involve his policy, "you" and any other involved "insured" must:

        (1)     Immediately record the specifics of the claim or "suit" and the date received; and

        (2)     **Notify "us" as soon as practicable."**

    c.      "You" and any other involved "insured" must:

        (1)     **Immediately** send "us" copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)     Authorize "us" to obtain records and other information;

        (3)     Cooperate with "us" in the investigation, settlement or defense of the claim or "suit"; and

        (4)     Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

Doc. 28-4, pp. 15-16 (emphasis added).

As mentioned above, under Illinois law, a policy provision requiring notice as soon as practicable "means notice must be given 'within a reasonable time,'" and that is a fact-dependent inquiry, guided by the *Country Mutual* factors. *West American*, **939 N.E.2d at 293.**

CIC maintains that Menards' notice -- of the accident and the lawsuit -- was unreasonably late as a matter of law (Doc. 37, p. 2). Menards was aware of the accident on May 20, 2014, and knew of the underlying lawsuit on September 29, 2014. On March 24, 2016, Menards sent a letter to CIC requesting defense and indemnification in the underlying lawsuit. A copy of the complaint in the underlying lawsuit was attached to that letter.

Menards first gave notice to CIC of the accident (and lawsuit) on March 24, 2016. CIC received no other notice of the accident before March 24, 2016 (*see* Doc. 37-1, p. 2, Affidavit of Ryan Barker, Assoc. Superintendent of Casualty Claims for CIC). The 3/24/16 notice came 22 months after the accident and 18 months after the underlying action was filed.

Menards concedes that it did not notify CIC until 18 months after the underlying action was filed. There is no question that the applicable policies required Menards to supply notice within a reasonable time. The question thus boils down to whether, under all the circumstances, Menards' notice was reasonable (triggering CIC's duties) or not reasonable (constituting a breach by Menards that precludes coverage).

To recap, the ***Country Mutual*** factors are:

(1)     the specific language of the policy's notice provision;
(2)     the insured's sophistication in commerce and insurance matters;
(3)     the insured's awareness of an event that may trigger insurance coverage;
(4)     the insured's diligence in ascertaining whether policy coverage is available; and
(5)     prejudice to the insurer.

***West American,*** **939 N.E.2d at 293-94,** *citing Country Mutual,* **845 N.E.2d at 539.**

As to (1), the policies required Menards to give notice to CIC within a reasonable time. As to (2), Menards is a sophisticated consumer in commerce and insurance matters. These two factors point in favor of CIC. As to (3), Menards was aware something had occurred (the accident on the parking lot) which might conceivably trigger insurance coverage under an insurance policy but lacked the information needed to verify potential coverage. Menards concedes it was "aware of the event

giving rise to the [underlying] lawsuit on the very day it happened on May 20, 2014," but "it is undisputed that Menards was not aware of the potential coverage under the Cincinnati policy until 18 months thereafter" (Doc. 38, p. 5).

The record before the Court (including the affidavit of attorney Kara Jones, Doc. 38-1) indicates that Jones, who was retained by Menards on October 1, 2014 in the underlying action, did not receive the relevant policies (issued by CIC) until 18 months later, on March 22, 2016. At that point, Jones' firm (Feirich, Mager, Green and Ryan) represented both Menards and CIC.

When Jones obtained the CIC policy on March 22, 2016, she recognized an obvious conflict of interest, advised Menards of the conflict, and (along with her firm) promptly withdrew from the case. Austin Heimann, corporate counsel for Menards, immediately mailed the summons and complaint from the underlying case to CIC and tendered defense of the underlying lawsuit to CIC. More specifically, Menards furnished notice and tendered defense of the underlying lawsuit to CIC on March 24, 2016 -- within two days of receiving the relevant insurance policies.

So, as to (4), the parties vigorously disagree about whether Menards exercised diligence in ascertaining whether coverage was available. In other words, in the 18-month period between the underlying lawsuit being filed and notice being given by Menards to CIC, did Menards exercise diligence to obtain the policies so as to be aware of the potential coverage thereunder?

Counsel urge opposite answers to this question, based on different decisions. Menards points to **West American,** in which the Illinois Supreme Court reversed a

lower court's ruling that an insured breached the policy requirement of timely notice and thereby forfeited coverage. The Supreme Court concluded that, on the facts of that case, a 27-month delay in furnishing written notice was not unreasonable as a matter of law but rather was reasonable because the insured was diligent in ascertaining whether coverage was available, and the insured did not suffer prejudice as a result of the delay. *Id.* at 295-96.

On the other hand, CIC relies on *Fairmount Park, Inc. v. Travelers Indemnity Co.,* **982 F. Supp. 2d 864 (S.D. Ill. 2013)**, and *Farmers Automobile Ins. Ass'n v. Burton,* **967 N.E.2d 329 (Ill. App. 2012).** In *Fairmount Park,* the insured failed to give notice to Travelers for more than 33 months after being served with a complaint in the underlying lawsuit, and the court concluded that the insured failed to exercise diligence in ascertaining whether coverage was available. *Id.* at 872. In *Farmers,* the insured waited 26 months before alerting his insurance company that he had hit and killed a pedestrian. The court found that the insured had failed to provide the required prompt notice to his insurer and this lack of diligence meant he was not entitled to coverage. *Farmers,* **967 N.E.2d at 335.**

Menards correctly points out that in both of those cases, the insured offered no explanation for the lengthy delay in notifying the insurance carrier and submitted no evidence of diligence during the intervening period. By contrast here, the record properly considered by the undersigned indicates that attorney Jones did exercise diligence in her quest to obtain the applicable insurance policies. As defense counsel notes, "Jones did not sit on her hands during the 18 months after the underlying

litigation was filed. She used every discovery tool at her disposal to obtain a copy of the Cincinnati policies of insurance" (Doc. 38, p. 15).

Indeed, in connection with the underlying lawsuit, Jones propounded interrogatories and requests for production of documents, wrote letters to opposing counsel inquiring about the policies, asked pertinent questions in depositions, and (once she discovered the name of the insurer) subpoenaed the information directly from CIC. The best the Court can glean, in March 2015, Jones learned that CIC insured the truck and the truck was owned by Ronald Gregory, stepfather of Sigler's girlfriend, but she only determined that *Menards* might be covered under the Gregorys' policies when (on March 22, 2016) she obtained the Auto Policy and reviewed the terms. At that point, Jones immediately told Menards that a conflict of interest required her firm to cease representation. On March 24, 2016, in-house counsel Heimann notified CIC of the underlying suit and tendered defense of the underlying suit to CIC.

Darin Sigler filed the underlying lawsuit on September 2, 2014. Menards was served with process on September 29, 2014. Menards retained Jones on October 1, 2014. On October 31, 2014, Jones or her firm sent a letter to Sigler's counsel, asking for a copy of the policy on the pickup truck that Sigler was driving at the time of the accident. Within two weeks, Jones or her firm propounded interrogatories and document requests as to the name of the owner of the truck Sigler was using and the insurance carriers who issued any policies on the truck. When discovery stalled through no fault of Jones or her firm, Jones (in February 2015) contacted Sigler's counsel in writing to demand that he comply with the discovery requests, specifically including the

insurance information she had requested months earlier.  Jones again contacted Sigler's lawyer in writing in early September 2015 to demand full compliance with the prior discovery requests.  Jones' colleague appeared at a hearing in the underlying action in January 2016 and again pressed Sigler's lawyer to produce the CIC policy in question.

Yet another written request for the policy was made on February 10, 2016.  One week later, Sigler's lawyer advised that neither he nor Sigler had a copy of the policy.  On March 9, 2016, having exhausted these channels of discovery, Jones subpoenaed the policy from CIC.  She received it March 22, 2016, and sent it to Menards' corporate counsel.  Within two days, Menards' corporate counsel notified CIC of the pendency of the underlying lawsuit and tendered defense of the suit to CIC.

Jones knew of the existence of insurance – albeit not the specific policies or the coverage they provided – in March 2015 (i.e., she knew that CIC insured the Gregorys' pickup, but she did not know that the policies potentially extended coverage to Menards).  Yes, she could have notified CIC of the accident and lawsuit earlier, and she could have subpoenaed the policies directly from CIC sooner.  But the record before the Court (properly considered on summary judgment under Rule 56)[4] establishes that Jones was earnestly and persistently taking steps to obtain the policies and pin down the coverage in the intervening period before notice was given to CIC in March 2016.

_____

[4]      Rule 56(c)(4) requires an affidavit used to support or oppose summary judgment to be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Jones' affidavit satisfies these criteria.  The affidavit recites facts of which Jones has personal knowledge, the bulk of the material contained in the affidavit is admissible, and Jones is competent to testify about her own actions in the 18-month window while endeavoring to learn whether coverage existed under one or more CIC policies.

As to factor (4), the Court concludes that Menards exercised diligence and reasonable care to ascertain whether policy coverage was available.

As to (5), the query is whether CIC was prejudiced by the delay in receiving notice from Menards. Without a doubt, prejudice is one factor in the reviewing court's assessment of reasonableness of the insured's notice. *Country Mutual*, **856 N.E.2d at 341-42.** The language of the Umbrella Policy in this case buttresses the relevance of prejudice to the Court's inquiry.

Section III – Conditions, Paragraph 7, "Duties in the Event of an Occurrence" (Doc. 28-4, p. 15), expressly states that CIC has no duty to provide coverage *if* the insured's failure to comply with its duties under the policy "is prejudicial" to CIC. This language supports the argument that, in wording the Umbrella Policy in this manner, CIC obligated itself to demonstrate that the insured's breach of a policy requirement, like prompt notice, is prejudicial to CIC.

The Seventh Circuit addressed nearly identical policy language in *Cincinnati Ins. Co. v. Estate of Toni Chee*, **826 F.3d 433, 435 (7th Cir. 2016).** In that case, CIC had issued a policy that required the insured to notify CIC "as soon as practicable" of any occurrence that may result in a claim or suit. An accident occurred in August 2010, and CIC (the excess insurer) did not receive notice of the underlying lawsuit against the insured until 16 months later. CIC filed suit in federal court, seeking a declaration that it had no duty to defend or indemnify the insured because, *inter alia*, the insured's notice came too late, relieving CIC of its duties under the policy. The Seventh Circuit rejected this argument, stressing that the requirement to provide notice as soon as

practicable was part of a larger section of the policy specifying the consequences of noncompliance with certain duties. The obligation to provide prompt notice was subject to the policy language that CIC had no duty to provide coverage if the insured's failure to comply with those duties *was prejudicial* to CIC. Because CIC had not identified any "concrete prejudice" from the long delay, CIC could not rely on the notice provision to deny coverage. **Id. at 435.**

In the case *sub judice*, the Umbrella Policy (Doc. 28-4, p. 13) contains the same language as in **Estate of Toni Chee**, stating that CIC has no duty to provide coverage under the Umbrella Policy if the insured's failure to give notice as soon as practicable "is prejudicial to" CIC. The parties argue as to the scope and effect of this language. CIC insists that prejudice is not required for the notice provision to be deemed breached, but even if prejudice *is* required under the Umbrella Policy, it is *Menards'* duty to show the absence of prejudice not CIC's duty to prove the existence of prejudice (*see* Doc. 45, p. 6). The Court need not get mired in this thicket. The bottom line is that prejudice is a factor to be considered by the undersigned in deciding whether Menards' lengthy delay in providing notice to CIC bars coverage under the policies, and the record offers scant evidence of any real prejudice to CIC. Stated another way, assuming *arguendo* that Menards must show the absence of prejudice to CIC, Menards has done so.

In its brief supporting summary judgment, CIC tendered a single undeveloped argument regarding prejudice -- CIC was prejudiced by not being able to participate in "critical aspects" of the underlying lawsuit between September 2014 and March 2016

(Doc. 37, p. 11, p. 13). CIC did not identify these critical aspects, explain what transpired in the underlying lawsuit during that time period, or suggest what would have been done differently in that lawsuit before March 2016 when CIC was notified.

Most likely, if CIC had learned of the underlying litigation sooner, it would have asked its local defense counsel to investigate and defend. But it turns out that is what in fact was happening during that entire 18-month period -- the defendant in the underlying lawsuit (Menards) was being defended by counsel -- the law firm of Feirich, Mager, Green and Ryan (the same firm CIC uses as local counsel).

In its May 23, 2017 reply brief (Doc. 45, p. 7), CIC repeats that it was prejudiced by the inability to participate in the early stages of the underlying litigation and fleshes out slightly what it believes it missed in the interim. CIC says defense counsel had already "worked up the case," conducted discovery, and engaged in some settlement negotiations with Darin Sigler before March 2016. But CIC does not shed light on, and the Court cannot glean, how these standard pretrial tasks being undertaken by local counsel, perhaps even the same counsel who have regularly defended CIC (the Feirich law firm), prejudiced CIC. Trial was set for mid-May of 2017. CIC was notified of the underlying lawsuit in March 2016, 13 months before the trial date (and over a year before settlement negotiations bore fruit). The undersigned concludes that Menards has demonstrated that CIC was *not* prejudiced by the delay in receiving notice.

The facts of this case are plainly distinguishable from those cases in which an insured has settled the underlying suit against the alleged tortfeasor and released the tortfeasor and her insurer before giving notice to the insurer, or cases in which the

underlying suit was fully litigated and appealed before giving notice to the insurer. *See, e.g., Kerr,* **670 N.E.2d at 767-68 (prejudice resulted when insurers were denied "any opportunity" to protect their interests by not receiving notice of underlying action until after trial *and* appeal);** *Vasquez v. Meridian Security Ins. Co.,* **Case No. 16-cv-0510-MJR-RJD (Doc. 35) (Plaintiff breached policy by settling underlying personal injury claim and executing general release before giving notice to her insured).** In both of those scenarios, the insureds were wholly denied the opportunity to assess the loss and protect their interest. That was not the situation here.

Given the facts and circumstances of this particular case, the undersigned rejects CIC's argument that Menards' delay was unreasonable as a matter of law. Menards is a sophisticated insured. And Menards was aware of an occurrence that might lead to a claim. But Menards acted with diligence in the interim, and CIC was not prejudiced by the delay.

As explained above, a duty to defend arises "when the allegations of the underlying complaint may potentially come within the coverage of the policy." *Westfield Ins. Co. v. West Van Buren, LLC,* **59 N.E.3d 877, 882 (Ill. App. 2016).** The court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine if facts alleged in the underlying complaint fall potentially within coverage. *Title Industry,* **853 F.3d at 883.** And certain extrinsic evidence may be considered if a declaratory judgment action has been filed. *Id.* **at 884.** The insurer's duty to defend arises even if only one of several theories alleged in the underlying complaint falls within the potential coverage of the policy. *Id.* "In

conducting its review, the court liberally construes the underlying complaint and the insurance policy in the manner reasonably most favorable to the insured." *Id.*

The policies at issue here covered the named insureds (Ronald and Virginia Gregory) plus any person "using" the insured auto. The allegations of the underlying complaint potentially fall within the coverage of the policy. For example, in the underlying action, Sigler asserted that the Menards employee who was helping him load the carpet into the truck and whose negligence resulted in injury to Sigler was using the covered vehicle in a manner that potentially triggers coverage under the policies. The Court hereby finds that CIC is obligated to defend Menards in the underlying action.

In its only dispositive motion, CIC narrowed its policy defenses to the sole argument that coverage was precluded because Menards breached the notice requirement -- i.e., Menards' notice was unreasonably late as a matter of law. Via application of the *Country Mutual* factors, the Court concluded to the contrary. In its May 23, 2017 reply brief, CIC contends that even if the undersigned finds that the Umbrella Policy requires prejudice and CIC was not prejudiced, CIC still owes nothing to Menards, because the Umbrella Policy only provides coverage in excess to all underlying insurance, and Menards (who has its own insurance) "has supplied no evidence to establish that its insurance is exhausted or does not apply" to the underlying lawsuit (Doc. 45, pp. 7-8). *As far as the resolution of the duty to defend is concerned,* this argument for summary judgment comes too late.

The deadline for all dispositive motions was March 20, 2017. CIC opted to file and brief a motion that rested on one theory -- "Menard failed to provide notice within a reasonable time.… [I]ts notice was unreasonably late as a matter of law … and there is no coverage available to Menard in connection with the Sigler lawsuit" (Doc. 36, p. 2). CIC cannot now assert that it is entitled to judgment based on a theory not presented in its summary judgment motion.

The issue teed up by the cross-motions for summary judgment was CIC's duty to *defend* Menards in the underlying lawsuit. In this Order, the undersigned finds in favor of Menards and against CIC on the duty to defend.

The duty to defend and the duty to indemnify are not coextensive. ***Sentry Ins. v. Continental Cas. Co.*, -- N.E.3d --, 2017 WL 1148476, \*7 (Ill. App. March 24, 2017).** A duty to defend arises if the facts alleged in the underlying complaint fall *potentially* within policy coverage, whereas the duty to indemnify (a narrower duty) arises only "if the insured's activity and the resulting loss or damage *actually* fall within the policy's coverage." ***Id.* at \*8 (emphasis in original). *Accord Allied Prop.*, 850 F.3d at 847 (insurer has duty to indemnify "only if the damages stemming from the underlying claim that resulted in liability actually fall within the policy's coverage").** The Court denies at this time the motions for summary judgment as to the duty to *indemnify*, which requires supplemental briefing.

D. <u>Conclusion</u>

The Court concludes as follows.

Under the Automobile Policy (which has a $250,000 per person limit and a $500,000 per accident limit) and the Umbrella Policy (which has a $1,000,000 per occurrence limit), CIC owed Menards a duty to defend.

The Court **DENIES** CIC's motion for summary judgment (Doc. 36) and **GRANTS** Menards' motion for summary judgment (Doc. 38) *as to the duty to defend* Menards in the underlying lawsuit. The Court **DENIES at this time** both motions *as to the duty to indemnify.* The parties touched upon but have not fully briefed the duty to indemnify. That issue now appears ripe for resolution. A release signed by Darin Sigler (Doc. 46-1) indicates that two weeks ago the underlying lawsuit was settled for $950,000.

The Court **CANCELS at this time** the final pretrial conference and trial (July 14, 2017 and July 31, 2017, respectively). The Court **DIRECTS** counsel to each file a "Memorandum On Duty to Indemnify" (no longer than 10 pages) addressing the duty to indemnify **on or before July 21, 2017**. Each side may respond to the other's memorandum via brief no longer than 7 pages by **August 21, 2017.** The undersigned also **ORDERS** CIC's counsel to contact the chambers of the Honorable Stephen C. Williams, Magistrate Judge**, no later than June 21, 2017** to schedule a settlement conference as soon as possible, at a time convenient for Judge Williams.

IT IS SO ORDERED.

DATED June 9, 2017.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge